CTJ

ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT. WORTH DIVISION

2009 DEC -8  AM 10: 45

CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | | § |
| | | § |
| v. | | § |
| | | § |
| ALBERTO PULIDO | (1) | § |
|   a/k/a "Betico" | | § |
| JUAN RAMIREZ | (2) | § |
| JAVIER ROSALES | (3) | § |
| JESUS ORTEGA | (4) | § |
| DANIEL BERNARDINO | (5) | § |
| GUSTAVO PULIDO | (6) | § |
| ISIDRO LOZANO | (7) | § |
| EDUARDO FLORES | (8) | § |

No. 4-09CR-160-A

## BENCH MEMORANDUM

The United States has received plea paperwork from several defendants in the

instant case.  This case arose from an investigation into the smuggling of guns to Mexico

to support the La Familia Drug Trafficking Organization.

At least two defendants will be pleading guilty to a conspiracy to violate 18 U.S.C.

§ 554.[1]  The statute underlying the violation of 18 U.S.C. § 554 is 22 U.S.C. § 2778, the

Arms Export Control Act (AECA).  The willfulness standard set forth by the Fifth Circuit

in a prosecution for a violation of 22 U.S.C. § 2778 is that the defendant acted with the

specific intent to violate a known legal duty.  *United States v. Covarrubias*, 94 F.3d 172,

---

[1]  As of this writing, Isidro Lozano and Eduardo Flores are the only defendants that have provided plea paperwork for a plea to a conspiracy to violate 18 U.S.C. § 554.

175 (5th Cir. 1996).[2]   As it relates to 22 U.S.C. § 2778, the Fifth Circuit Pattern Jury

Instructions (2001) set forth a willfulness standard that the United States believes is no

longer applicable, based upon the holding of the Supreme Court in *United States v.*

*Bryan*, 118 S.Ct. 1939 (1998).[3]

Being aware of the apparent contradiction between the Supreme Court in *Bryan,*

the *Covarrubias* decision, and the pattern jury instructions, the United States notified the

defendants that are contemplating pleading guilty to the 18 U.S.C. § 371 offenses in the

instant case of the possible conflict.  The United States also notified defense counsel that

it would argue for the *Bryan* standard at trial.  Although the United States believes it

could prevail under the more rigorous standard, it does not believe it should assume a

more difficult burden than required by law.

Although defense counsel agreed to submit the elements as provided in the factual

resumes, the United States provides this memorandum to address the current status of the

case law in this area.

In *United States v. Rodriguez*, 132 F.3d 208 (5th Cir. 1997), the court addressed the

knowledge requirement for a conviction of 18 US.C. §§ 922(a)(5) and 924(a)(1)(D).  In

*Rodriguez*, the defendant was convicted of the willful sale of firearms to out-of-state

residents where either the seller or purchaser lacks a federal firearms license, and of

---

[2]   In a recent unpublished opinion, the Court noted that the *Covarrubias* standard applied.  However, neither the government nor the defendant had contested the willfulness issue at trial.  *United States v. Caldwell*, 295 Fed.Appx 689, 694 (5th Cir. 2008).

[3]   The Fifth Circuit District Judges Association stated in the Note to the pattern instruction on 22 US.C § 2778 that it recognized that the *Bryan* decision might not require the strict scienter requirement under the Firearms Owners' Protection Act, but recommended that this statute, as a technical statute, required the intentional violation of a known legal duty.

conspiracy to commit such an offense. The trial judge instructed the jury that it must find that the defendant had knowledge of the specific legal prohibition against selling firearms without a license to an out-of-state resident. The Fifth Circuit agreed that to find the defendant guilty of a willful violation of the law, the government must prove "actual knowledge of the law." *Id.* at 211.

In its analysis, the *Rodriguez* court noted that one circuit, the Second Circuit, disagreed with the Fifth Circuit, and had held that there was no need for the government to prove specific knowledge of a particular statute. *Id.* The *Rodriguez* court went on to note that this conflicting opinion of the Second Circuit was currently being reviewed by the Supreme Court in *U.S. v. Bryan. Id.* The date of the *Rodriguez* opinion is December 31, 1997. *Id.* at 208.

On February 3, 1998, the First Circuit addressed the same issue in *United States v. Andrade*, 135 F.3d 104 (1st Cir, 1998). The *Andrade* court held that the government need only prove that the defendant was aware his conduct was unlawful; there is no requirement that the government prove the defendant knew of the specific statutory requirement of needing a license to deal in firearms. *Id.* at 110. In noting a circuit split, the *Andrade* court cited two cases that had held that conviction requires proof that the defendant was aware of the licensing requirement itself – an argument the First Circuit found unpersuasive. Those two cases were the *Rodriguez* case from the Fifth Circuit, and *United States v. Sanchez-Corcino*, 85 F.3d 549 (11th Cir. 1996). *Id.* at 109.

The Supreme Court then faced the question of whether the term "willfully" in 18 U.S.C. §924(a)(1)(D) requires proof that the defendant knew his conduct was unlawful or

whether it also requires proof that he knew of the specific federal licensing requirement. Because the Eleventh Circuit had held that it is necessary for the Government to prove that the defendant acted with knowledge of the actual licensing requirement, the Court granted certiorari to resolve the conflict. The Eleventh Circuit conflict arose from *Sanchez-Corcino*. On June 15, 1998, the Supreme Court issued its decision in *United States v. Bryan*, 118 S.Ct 1939 (1998).

The defendant in *Bryan* had been charged with a conspiracy to violate 18 U.S.C. § 922(a)(1)(A) by willfully engaging in the business of dealing in firearms without a federal license and with a substantive violation of that provision. *Id.* at 1944.

Over the objection of the defendant, the trial judge gave the following explanation of the term "willfully:"

> A person acts willfully if he acts intentionally and purposely and with the intent to do something the law forbids, that is, with the bad purpose to disobey or disregard the law. Now the person need not be aware of the specific law or rule that his conduct may be violating. But, he must act with intent to do something that the law forbids.

*Id.*

The Supreme Court held that the willfulness requirement does not carve out an exception to the traditional rule that ignorance of the law is no excuse; knowledge that the conduct is unlawful is all that is required. *Id.* at 1947. As discussed above, the Supreme Court in *Bryan* specifically addressed a circuit conflict created by the Eleventh Circuit in *Sanchez-Corcino*, with regard to the meaning of "willful" conduct in the context of a "licensing" prosecution. The Eleventh Circuit's approach, which was rejected by the Supreme Court in *Bryan*, relied upon Eleventh and Fifth Circuit precedent

from export control cases involving the AECA. *See Sanchez-Corcino*, 85 F.3d at 553 n.2 (citing Eleventh Circuit opinions which in turn relied upon Fifth Circuit precedent such as *US v. Wieschenberg*, 604 F.2d 326 (5th Cir. 1979) (AECA case)). Although *Bryan* itself did not involve a prosecution under the Arms Export Control Act, the Supreme Court in *Bryan* nonetheless rejected the Fifth and Eleventh Circuit's line of cases defining willfully under the AECA as currently set forth in the Fifth Circuit's Pattern Jury Instructions.

Although never explicitly overruling *Rodriguez*, subsequent to the *Bryan* decision, the Fifth Circuit has adopted the new standard for willfulness. *See United States v. Kay*, 513 F.3d 432, 442, 450-451 (5th Cir. 2007)(affirming Foreign Corrupt Practices Act (FCPA) where corporate officials paid bribes to Haitian government officials to lower customs duties and taxes among other purposes; rejecting the defense contention that the government must show, to satisfy the willful and corrupt conduct requirements under the FCPA, that the defendant knew he was violating the FCPA; adopting the *Bryan* standard concerning willful conduct and noting that "willfulness does *not* generally require that the defendant knew that he was violating the specific provisions of law," and stating that the court's jury instructions concerning willfulness are sufficient where they require a showing "that a defendant knew that he was doing something generally 'unlawful.'")

The *Kay* court set forth three levels of criminal willfulness. The "intermediate" level of criminal willfulness requires the defendant to have known that his actions were in some way unlawful. Under this standard, the defendant need not have known of the specific statute, but instead must have acted with the knowledge that he was doing a bad

act under the general rules of law. *Id.* at 447-448. In setting forth the third, and most rigorous willfulness standard, the court stated,

> The strictest level of interpretation of criminal willfulness requires that the defendant knew the terms of the statute and that he was violating the statute. The courts have reserved this category to limited types of statutory violations involving "complex" statutes – namely those governing federal tax law and antistructuring transactions.

*Id.* at 448.

The statute at issue in the instant case is not complex, and in any event, is much less complex than the FCPA.[4] The violation does not implicate federal tax law or antistructuring transactions. Therefore, the second, or "intermediate," standard should apply.

In 2001, the Fifth Circuit addressed the Trading With the Enemy Act (TWEA) in *United States v. Huynh*, 246 F.3d 734 (5th Cir. 2001). The court held that under the willfulness standard of the TWEA the "government is not required to establish that [the defendant] had knowledge of the specific regulations governing his conduct but 'must

---

[4]  The FCPA, 15 U.S.C. §§ 78dd-2, 78ff, states it shall be unlawful for any domestic concern, other than an issuer which is subject to section 78dd-1 of this title, or for any officer, director, employee, or agent of such domestic concern or any stockholder thereof acting on behalf of such domestic concern, to make use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to--

**(1)** any foreign official for purposes of--

**(A)**(i) influencing any act or decision of such foreign official in his official capacity, (ii) inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official, or (iii) securing any improper advantage; or

**(B)** inducing such foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

in order to assist such domestic concern in obtaining or retaining business for or with, or directing business to, any person.

prove only that the defendant knew that his planned conduct was legally prohibited.'"

*Id.* at 742, *quoting United States v. Tooker*, 957 F.2d 1209, 1214 (5ᵗʰ Cir. 1992).

In a prosecution under the International Emergency Economic Powers Act
(IEEPA) for unlicensed exports of computers to Libya and Syria and dealing in the
property of a designated terrorist, the Court of Appeals for the Fifth Circuit in *United
States v. Elashyi*, 554 F.3d 480, 505 (5th Cir. 2008), relied upon the Supreme Court's
definition of the term "willful" as set forth in *Bryan* to reject the defendant's challenge to
the trial court's jury instruction on the meaning of "willful" conduct.  The defendants had
argued that the government needed to prove not only that they intended to violate the law
by dealing in the property of a Specially Designated Terrorist, but that they also intended
that the property be used to further the unlawful activities of the Specially Designated
Terrorist.  *Id.* at 504.  The Court of Appeals stated:

> In *Bryan v. United States*, 524 U.S. 184 (1998), the Supreme Court held that the
> term 'willful' in the criminal context  generally requires that 'the Government must
> prove that the defendant acted with knowledge that his conduct was unlawful.'
> The district court properly instructed the jury that 'willfully' means 'with the
> specific intent to do something the law forbids; that is to say, with the bad purpose
> either to disobey or disregard the law.'  Accordingly, we hold that the district court
> did not err in instructing the jury.

> *Id.* at 505.

So, in light of (1) the definition of "willful" conduct by the Supreme Court in the
*Bryan* opinion, (2) the Supreme Court's specific rejection of the 11th Circuit's definition
of "willful" conduct, which was based upon Fifth Circuit precedent in cases under the
Arms Export Control Act, and, last but certainly not least, (3) the Fifth Circuit's own
opinions in *Kay, Huynh*, and *Elashyi* and adoption of the *Bryan* standard for "willful"

conduct in the context of export control/embargo prosecutions, the old Fifth Circuit Model Instruction for "willful" conduct in an export control prosecution should be abandoned.

Beyond the Fifth Circuit, the trend among other circuits is to reject the higher standard of criminal intent requiring a showing the defendant knew of the specific licensing prohibition or regulation and, instead, to adopt the approach of the Supreme Court in *Bryan* as establishing the appropriate definition of "willful" conduct in an export licensing or embargo prosecution. The following opinions are illustrative of that trend:

- *United States v. Brodie*, 403 F.3d 123, 147 (3rd Cir. 2005) (reversing district court's entry of judgment of acquittal following TWEA conviction and relying upon *Bryan* to set the appropriate standard of criminal intent).

- *United States v. Homa International Trading Corp,* 387 F.3d 144, 146-147 (2nd Cir 2004) (affirming IEEPA conviction and relying upon *Bryan* as setting forth the appropriate standard concerning a willful violation under IEEPA).

- *United States v. Quinn*, 403 F.Supp. 2d. 57, 61 (D.D.C. 2005) (denying motion for judgment of acquittal in prosecution under IEEPA for unlicensed export of commercial goods to Iran and citing *Bryan*, stating, "Surely neither Congress in passing IEEPA nor the Executive Branch in promulgating the I[ranian] T[ransaction] R[egulations] intended to foreclose prosecution of persons who knew the gist, but not the exact details, of the law they are accused of violating. A defendant's assertion, no matter how credible, that he 'had not brushed up on the law' has never been deemed a sufficient defense to a crime requiring

knowledge of illegality.  In fact, that is precisely the result that the Supreme

Court sought to avoid [in *Bryan*] when it upheld a conviction for willfully

engaging in the sale of firearms without a federal license even though the

government had not been required to prove that the defendant was aware of the

particular requirement of a license."(citations omitted)).

■ *United States v. Al-Arian*, 308 F.Supp. 2d 1322, 1340 (M.D. Fla. 2004)

(relying upon *Bryan* to define willful conduct in the context of IEEPA

violation under 50 U.S.C. § 1705 and observing that "knowledge of IEEPA,

the Executive order or the regulations thereunder is not necessary to support a

conviction.").

■ *United States v. Lindh*, 212 F.Supp. 2d 541, 574 (E.D.Va 2002), (citing *Bryan*

with regard to the requisite criminal intent for an IEEPA violation relating to

the provision of unlicensed services to specially designated persons or

terrorists.)

Therefore, for the reasons stated above, the United States believes that the district court may accept the proposed plea agreements as written and adopt the willfulness standard set forth in the *Bryan* decision.

Respectfully submitted,


JAMES T. JACKS
UNITED STATES ATTORNEY

JOSHUA T. BURGESS
Assistant United States Attorney
Texas State Bar No. 24001809
Burnett Plaza, Suite 1700
801 Cherry Street, Unit #4
Fort Worth, Texas 76102-6882
Telephone: 817.252.5275
Facsimile: 817.978.3094

## CERTIFICATE OF SERVICE

This is to certify that on this the 8th day of December, 2009, the foregoing governmental response to the defendant's motion was served on Matt Belcher, counsel for Juan Ramirez, Jim Shaw, attorney for Javier Rosales, Steven Bush, counsel for Jesus Ortega, Roderick White, counsel for Daniel Bernardino, Charles Roach, counsel for Gustavo Pulido, Mark Danielson, counsel for Isidro Lozano, and John Stickels, counsel for Eduardo Flores.

JOSHUA T. BURGESS
Assistant United States Attorney

Bench Memorandum – Page 10