```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF TEXAS
                             FORT WORTH DIVISION

UNITED STATES OF AMERICA         .   CRIMINAL ACTION NO.
                                 .   4:09-CR-160-A
V.                               .
                                 .   Fort Worth, Texas
GUSTAVO PULIDO                   .   April 30, 2010
. . . . . . . . . . . . . . . . . .


                      TRANSCRIPT OF PROCEEDINGS
                         (Sentencing Hearing)
                 BEFORE THE HONORABLE JOHN MCBRYDE
                    UNITED STATES DISTRICT JUDGE




APPEARANCES:

For the Government:              MR. JOSHUA T. BURGESS
                                 United States Attorney's Office
                                 801 Cherry Street, Suite 1700
                                 Fort Worth, Texas  76102-6897
                                 (817) 252-5200

For the Defendant:               MR. GREGORY B. WESTFALL
                                 Westfall, Platt & Cutrer
                                 Mallick Tower
                                 One Summit Avenue
                                 Suite 910
                                 Fort Worth, Texas  76102
                                 (817) 978-2753

Court Reporter:                  MS. ANA P. WARREN
                                 U.S. District Court Reporter
                                 501 W. 10th Street, Room 201
                                 Fort Worth, Texas  76102-3637
                                 (817) 850-6681


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.
```

1              ***P R O C E E D I N G S***

2         (Commencing, 10:00 a.m.)

3             THE COURT:  I'm next calling in the same case

4    Number 4:09-CR-160-A, Defendant Pulido, and Mr. Westfall is

5    here representing Mr. Pulido.

6       Let's see.  Your client needs an interpreter as well?

7             MR. WESTFALL:  He does, Your Honor.

8             THE COURT:  And Francisco Hernandez is here for that

9    purpose.

10      Okay.  Mr. Pulido, state your full name for the record.

11            DEFENDANT PULIDO:  Gustavo Pulido.

12            THE COURT:  Okay.  You appeared before me on the

13   December 9, 2009 -- no, that's not right.  It was on

14   December 31, 2009, when you pleaded guilty to the offense

15   charged by Count 1 of the superseding indictment, and that was

16   the offense of conspiracy to smuggle goods from the United

17   States, and you're here today for sentencing based on the

18   conviction resulting from that plea.

19      Mr. Westfall, did you and your client receive in a timely

20   manner the presentence report and the addendum to the report?

21            MR. WESTFALL:  We did, Your Honor.

22            THE COURT:  Were those items read to your client in

23   his language?

24            MR. WESTFALL:  It was, Your Honor.

25            THE COURT:  And did the two of you discuss those

1  items in his language?
2          MR. WESTFALL:  We did, Your Honor.
3          THE COURT:  Well, you've made several objections.  It
4  looks like you hit a home run.  One was accepted by the
5  probation officer.
6          MR. WESTFALL:  That's correct, Your Honor.
7          THE COURT:  Okay.  There being no further objections
8  to the presentence report, the Court adopts as the fact
9  findings of the Court the facts set forth in the presentence
10 report as modified or supplemented by the addendum and any
11 facts I've -- well, I haven't found any from the bench.  The
12 Court adopts as the conclusions of the Court the conclusions
13 expressed in the presentence report as modified or
14 supplemented by the addendum.
15     The Court concludes that the total offense level is 23.
16 That the Criminal History Category is 1.  That the
17 imprisonment range is 46 to 57 months.  That the fine range is
18 $10,000 to $100,000, and that a special assessment of $100 is
19 mandatory.  The supervised release range is two to three
20 years.
21     Okay.  You can make whatever statement you would like to
22 make on behalf of your client.
23         MR. WESTFALL:  Your Honor, I actually have on file a
24 motion for a downward variance.
25         THE COURT:  Oh, did you want to offer any evidence in

```
 1   support of that?
 2          MR. WESTFALL:  Please.
 3          THE COURT:  Go ahead.
 4          MR. WESTFALL:  We call Diana Pulido.
 5          THE COURT:  Okay.  Do you want her to talk at the
 6   microphone, or are you actually going to develop testimony?
 7          MR. WESTFALL:  May I go ahead and do question and
 8   answer, Your Honor?
 9          THE COURT:  Yes.
10       Raise your right hand to be sworn.
11       (Witness sworn by the Court)
12          THE COURT:  Okay.  Come on up here and be seated.
13       Does she need an interpreter?
14          MR. WESTFALL:  No, she does not.
15          THE COURT:  Okay.  You may proceed.
16          MR. WESTFALL:  Thank you.
17         DIANA PULIDO, testified under oath as follows:
```

                          **DIRECT EXAMINATION**

```
19   BY MR. WESTFALL:
20   Q.  Ms. Pulido, would you please state your full name for the
21   record?
22   A.  Diana Pulido.
23   Q.  And you live here in Fort Worth?
24   A.  Yes, sir, we do.
25   Q.  And who are you married to?
```

```
 1    A.   Gustavo Pulido.
 2    Q.   How long have you all been married?
 3    A.   We're going on our 29th year.
 4    Q.   Where are you originally from?
 5    A.   I was born in Mexico, but I was raised here in Texas.
 6    Q.   And when did you meet Gustavo?
 7    A.   I met Gustavo in 1978, '79.
 8    Q.   Where is he originally from?
 9    A.   He's also from Mexico.
10    Q.   And when did you all get married?
11    A.   We were married in 1981.
12    Q.   How long have you been a citizen?
13    A.   I have been a citizen since 1980.
14    Q.   And did Gustavo ever become a citizen?
15    A.   No, he did not -- no.
16    Q.   What do you do for a living?
17    A.   I am an administrative assistant at Alcon Laboratories.
18    Q.   How long have you been doing that?
19    A.   I have been there for 16 years.
20    Q.   What did Gustavo do for a living?
21    A.   He worked at Aluminum Boundaries.  He would be the
22    finisher, grinder, as specified by blueprints.
23    Q.   Did there come a time when Gustavo did not work any
24    more?
25    A.   Yes.  He was injured at work.  Because of that, he has had
```

1 three major surgeries on his back.
2 Q. What -- about what year did that happen?
3 A. He was injured in '99. It was '99 or 2000, early part of
4 the year.
5 Q. And what kinds of -- you mentioned major surgery. What
6 are we talking about? What kind of surgeries?
7 A. His first surgery he had a back fusion. They removed a
8 hip bone from him and placed it in his back. His L-4, L-5,
9 S-1 was fused, and that was like a four hour surgery.
10    And the second surgery, he -- to me they look like a cage
11 in his back. It was all metal. They removed his fusion, and
12 they put metal along with screws in his back, and that was
13 like a ten hour surgery. When he came out of surgery, we
14 didn't even recognize him. He looked so bad.
15    And the third surgery -- because he suffered so much with
16 the pain and all the metal in his back, they had to do a third
17 surgery and remove all of that metal, and then they put
18 more -- a donor bone in his back where they fused it again.
19 So he's limited on his bending abilities, and he's limited on
20 a lot of things that he can do.
21 Q. At the same time, did you also have children?
22 A. Yes. We have three sons. They are all here with him, 20,
23 24, and 28.
24 Q. Once he became disabled, what is the -- what are the roles
25 in the house?

1  A.  Well, my two older boys started to go to college, and they
2  had to drop out so they can help make ends meet at home.
3  Gustavo was suffering from a lot of depression because he was
4  not able to support his family anymore.  So the boys dropped
5  out of college to help me at home pay bills and put food on
6  the table and pay the mortgage.  They helped me help Gustavo
7  get out of his slump there.
8  Q.  And did he?
9  A.  He's been in and out.  It's really hard with him.  I think
10 a lot of it has to be the way he was raised.  He's Hispanic,
11 and they are suppose to support their family, and it's very
12 hard for him not to be able to do what he's suppose to do.
13 Q.  How many family members does Gustavo have that live here
14 in the United States?
15 A.  His entire family lives here.  He has two brothers and
16 three sisters and his parents.  They all live here.  Everybody
17 except his parents are U.S. Citizens.  His parents are legal
18 residents, and they have been legal residents for several
19 years now, and everybody lives here in Fort Worth.
20 Q.  And you know that he will no doubt be deported as a result
21 of this?
22 A.  Yes, sir.
23 Q.  What do you all plan to do?
24 A.  We don't know yet.  I think we'll cross that bridge when
25 we get there.

1          MR. WESTFALL:  Thank you.
2     Your Honor, we'll pass the witness.
3          THE COURT:  Okay.  Do you have any questions you want
4  to ask?
5          MR. BURGESS:  No, Your Honor.  Thank you.
6          THE COURT:  You may step down, ma'am.  Thank you.
7          THE WITNESS:  Thank you.
8          THE COURT:  Okay.  Did you have anything else you
9  wanted to offer from an evidentiary standpoint in support of
10 the motion for downward variance?
11         MR. WESTFALL:  Your Honor, not from a testimonial
12 standpoint, but there are parts of the PSI that I would like
13 to go ahead and designate for the Court.  Of course --
14         THE COURT:  Well, I'll let you make a statement.  I
15 just wondered --
16         MR. WESTFALL:  Okay.  No, Your Honor.  There is no
17 new testimony.
18         THE COURT:  Okay.  There being no further objections
19 to the presentence report -- have I made that finding?
20    Okay.  You can go ahead and make your statement then.
21         MR. WESTFALL:  Your Honor, I basically have four
22 reasons that I've set out in the motion for a variance.  One
23 is, of course, complete lack of criminal history.  The other
24 is the physical condition, and the other is deportation and
25 cultural assimilation, all of which, as I've cited in the

1  motion, are valid reasons for the Court to vary below the
2  sentencing guidelines after Booker.
3      Since I wrote that, I've looked a little bit more into the
4  issue -- the final issue that I argue, and that's relatively
5  minimal involvement in the conspiracy, and I've come to
6  believe that I probably didn't make an objection that I should
7  have made, and that's the minimal role issue.
8      I disagree with counsel for Mr. Bernardino about him
9  having the lowest role in this case.  Gustavo Pulido allowed
10 eight guns, eight semiautomatic rifles, a box of magazines for
11 those eight semiautomatic rifles, and 100 rounds of ammunition
12 to be stored at his house one time --
13         THE COURT:  Let me mention something in reply to what
14 you just said and whether you should have made such an
15 objection.
16     I thought about the role in the offenses as to each of
17 these defendants, and I'm satisfied that this defendant would
18 not, if you had made such an objection, have been entitled to
19 a reduction in his offense level based on his role in the
20 offense.  Without somebody participating and performing the
21 function that he performed, the operation wouldn't have
22 worked.  So he was an integral part of the overall operation,
23 and as I indicated in the sentencing of one of the earlier
24 people, this would be a very serious violation.
25         MR. WESTFALL:  Agreed, Your Honor, agreed.  Of

1  course, that was my first instinct, which is why I didn't
2  object to begin with, but then I saw the application note that
3  a defendant who is accountable only for conduct in which the
4  defendant personally was involved and who performs a limited
5  function in a concerted criminal activity is not precluded
6  from consideration.  And then it gives as an example, a
7  defendant who is convicted of a drug trafficking offense and
8  the role in that offense was limited to transporting or
9  storing drugs and who is accountable under 1B1.3 only for the
10 quantity of drugs the defendant personally transported and
11 stored, is not precluded from consideration for an adjustment
12 under this guideline.  Of course, that doesn't mean he's
13 not -- he's entitled to it, but he's not precluded from it,
14 and that is what has given me pause.
15     And the consequences for -- I mean, it's obvious, Your
16 Honor, any federal crime is a serious crime, but the
17 consequences, the wreckage that this is going to cause to a
18 good family and the deportation and being in Mexico without
19 medical care and being in prison with his condition, all those
20 things gathered together, along with the relatively minimal
21 part he played in those -- I mean, if we could get two levels,
22 Your Honor, we would be ecstatic, and that's what we would get
23 under a minimal role -- or a minor role.
24     I think everything I've said has some sort of evidentiary
25 support, either through the testimony of Ms. Pulido or in the

1  PSI, and I would appreciate the Court considering that.
2          THE COURT: Mr. Pulido, you have the right to make
3  any statement or presentation you would like to make on the
4  subject of mitigation, that is, the things you think the Court
5  should take into account in determining what sentence to
6  impose or on the subject of sentencing more generally, and at
7  this time I would invite you to do that.
8          DEFENDANT PULIDO: Thank you.
9      I apologize to the authorities, my family, my mother and
10 my father, my wife. I just want an opportunity to prove to
11 them that I'm a right man, an honest man. I've always been
12 working for this country, and I want to continue to serve this
13 country. Thank you.
14         MR. WESTFALL: Your Honor, I didn't realize that we
15 were as far ahead as we are. His pastor actually wanted to
16 briefly address the Court from here.
17         THE COURT: That's fine if he wants to come forward
18 at this time.
19     If you would identify yourself and where you live.
20         PASTOR MESSMAN: Your Honor, I'm Pastor John Messman
21 of St. Paul Lutheran Church downtown and a resident of the
22 city of Fort Worth.
23         THE COURT: Okay. Go ahead.
24         PASTOR MESSMAN: Your Honor, I've been acquainted
25 with Mr. Pulido and members of his family for 15 years as

1 pastor of the congregation in which they have participated.  I
2 have observed Mr. Pulido and his family to be people who
3 respect the laws of this land and seek to comply with them.
4 It is my desire to express to the Court, Your Honor, that as
5 I've observed such behaviors in this family, it would be my
6 request for the Court's consideration of leniency, respecting
7 the prescriptions of federal law in this case and the
8 unfortunate circumstance in which Mr. Pulido has found
9 himself.  It is my privilege and my desire to be able to make
10 that request based upon my observations of Mr. Pulido and his
11 family, and I thank you.
12             THE COURT:  Okay.  Thank you for being here.
13             MR. WESTFALL:  And then, Your Honor, on this side of
14 the courtroom are Mr. Pulido's entire family and supporters.
15             THE COURT:  Okay.  Well, I thank all of you for being
16 here.
17             MR. WESTFALL:  And that's all, Your Honor.
18             THE COURT:  Well, as often happens, a sentence of
19 imprisonment can be devastating to the family members as well
20 as to the defendant, but the crime that's been committed is a
21 serious crime, and it's deserving of a significant sentence of
22 imprisonment.  However, I am going to take into account the
23 things I've heard in deciding the level of imprisonment, and
24 taking those things into account, I've concluded that a
25 sentence near the bottom of the advisory guideline range would

Case 4:09-cr-00160-P   Document 275   Filed 07/13/10   Page 13 of 16   PageID 1671

13

1  be a reasonable sentence, sentence of imprisonment, and I do
2  plan to impose a sentence of imprisonment of 48 months to be
3  followed by a term of supervised release, which will include
4  as a condition that the defendant, when he's served his term
5  of imprisonment, be surrendered to the immigration officials
6  for deportation.  In addition, I plan to impose an obligation
7  to pay a special assessment of $100.  That would be payable
8  immediately.
9      In my view, a sentence of the kind I've described is a
10 reasonable sentence that adequately and appropriately
11 addresses all the factors the Court should consider under 18,
12 United States Code, Section 3553(a).
13     So the Court's ordering and adjudging that the defendant
14 be committed to the custody of the Bureau of Prisons to serve
15 a term of imprisonment of 48 months.  I'm ordering that the
16 defendant serve a term of supervised release of three years.
17 That will start when he gets out of prison.
18     Now, pursuant to United States Code, Section 3583(d), as a
19 condition of supervised release, once the defendant is
20 released from prison, he shall be surrendered by the Bureau of
21 Prisons to a duly authorized immigration official for
22 deportation in accordance with the established procedures
23 provided by the Immigration and Nationality Act.
24     As a further condition of supervised release, if the
25 defendant is ordered deported, he shall remain outside the

14

1   United States.  Now, in the event he is not deported
2   immediately upon release from imprisonment or should he ever
3   be within the United States during any portion of his term of
4   supervised release, he shall comply with the standard
5   conditions of supervised release that will be set forth in the
6   judgment of conviction and sentence and the following
7   additional conditions:
8      He shall not possess illegal controlled substances.  He
9   shall not commit another federal, state, or local crime.  He
10  shall cooperate in the collection of DNA as directed by the
11  probation officer and as authorized by the Justice For All Act
12  of 2004.  He shall participate in mental health treatment
13  services as directed by the probation officer until
14  successfully discharged, and those services may include
15  prescribed medications by a licensed physician, and the
16  defendant will contribute to the cost of those services at the
17  rate of at least $25 a month.  The Court further orders that
18  the defendant pay a special assessment of $100.  That's
19  payable immediately to the United States of America through
20  the office of the United States Clerk.
21     Let's see.  Does the government have a motion to make in
22  this case?
23         MR. BURGESS:  Yes, Your Honor.  I move to dismiss all
24  the remaining charges against the defendant as well as the
25  forfeiture count.  Thank you.

1      THE COURT: Okay. And that motion is granted as to
2  this defendant.
3      Mr. Pulido, you have the right to appeal from the sentence
4  I've imposed if you're dissatisfied with it. That appeal will
5  be to the United States Court of Appeals for the Fifth
6  Circuit. You have the right to appeal in forma pauperis.
7  That means without any cost to you if you qualify for it. You
8  have the right to have the clerk of the Court file a notice of
9  appeal for you, and the clerk will do that forthwith if you
10 were to specifically request it.
11     You and your attorney have been given a form that outlines
12 certain rights and obligations in reference to an appeal. If
13 you haven't already done so, I want the two of you to review
14 that and be sure you understand it, and once both of you have
15 reviewed it in your language and once both of you are
16 satisfied that you understand it, I want both of you to sign
17 it and return it to the Court coordinator.
18     Has that been done?
19         MR. WESTFALL: It's already been done, Your Honor.
20         THE COURT: Okay. The defendant is ordered into
21 custody, and the attorneys are excused, and the interpreter is
22 excused.
23         THE INTERPRETER: Thank you, Your Honor. I
24 appreciate it.
25         THE COURT: Thank you.

1      (End of proceedings, 10:20 a.m.)

2                            -oOo-

3

4                          I N D E X

5    Witnesses:        Direct     Cross    Redirect    Recross

6    Diana Pulido         4

7

8

9                            -oOo-

10

11

12

13

14

15

16

17

18

19

20                         CERTIFICATE

21       I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter, and
22   that the transcript was prepared by me and under my
     supervision.
23
     s/  Ana P. Warren                          July 13, 2010
24   Ana P. Warren, CSR #2302                       Date
     U.S. District Court Reporter
25                           -oOo-